1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    GEORGE JARVIS AUSTIN,                    Case No.  24-cv-04188-AMO
                Plaintiff,
8
                                             **ORDER DISMISSING PLAINTIFF'S**
9         v.                                 **FIRST AMENDED COMPLAINT**

10   KIA CORPORATION, et al.,                Re: Dkt. No. 56
                Defendants.
11
12
13        Plaintiff George Jarvis Austin, representing himself, initiated this action on July 11, 2024,

14   asserting several causes of action arising from purported race discrimination in the distribution of

15   class action settlement funds.  Dkt. No. 1.  Austin brings this action against Kia Corporation, Epiq

16   Class Action and Claim Solutions, Inc., and 15 judges in this District, seeking damages and

17   injunctive relief.  Before the Court is Epiq's motion to dismiss Austin's operative first amended

18   complaint ("FAC"), Dkt. No. 56, which Defendant Kia Corporation joins, Dkt. No. 58.  Because

19   the Court determined the motion was suitable for decision without oral argument, the Court

20   vacated the hearing.  *See* Dkt. No. 91.  Having carefully reviewed the parties' papers and the

21   arguments made therein, as well as the relevant legal authority, the Court hereby **GRANTS** the

22   motion and dismisses Austin's FAC for the following reasons.

23   **I.    DISCUSSION**[1]

24        Austin, a class member in a product liability class action settled by Kia, alleges he did not

25   receive the full reimbursement to which he was entitled under the class action settlement due to

26
     _____

27   [1] As it must, the Court accepts Austin's factual allegations as true and construes the pleadings in
     the light most favorable to him.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,
28   1031 (9th Cir. 2008).

United States District Court
Northern District of California

Kia's and third-party administrator Epiq's fraudulent and discriminatory conduct, as well as that of 15 judges in this District ("Judicial Defendants").[2]  Austin appears to assert causes of action under 42 U.S.C. § 1981 and the Lanham Act, violations of equal protection and due process, and fraud and negligence claims.[3]  He demands between $500,000 and $1 million as well as injunctive relief as to the Judicial Defendants.  Because the FAC fails to plausibly allege any claim upon which relief can be granted, the Court dismisses it in its entirety.  If Austin can cure the deficiencies described below, he may file an amended complaint subject to the limitations identified herein.

### A.    Legal Standard

To overcome a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the plaintiff's complaint " 'must . . . suggest that the claim has at least a plausible chance of success.' "  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (alterations in original)).  In ruling on the motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031 (citation omitted).  "[A]llegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  A court may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (citing *Johnson v. Riverside Healthcare Sys.*, LP, 534 F.3d 1116, 1121 (9th Cir. 2008)).

---

[2] The Judicial Defendants include Judges Susan Illston, Donna Ryu, Trina Thompson, Edward Chen, Richard Seeborg, Saundra Brown Armstrong, Maxine M. Chesney, Alex G. Tse, William Alsup, Edward J. Davila, Rita F. Lin, Yvonne Gonzales Rogers, James Donato, William H. Orrick, and Charles R. Breyer.

[3] Austin does not clearly state against whom he asserts each cause of action.  Because allegations regarding the Judicial Defendants appear only in the section titled "Equal Protection – Due Process," the Court understands Austin to assert only those claims against the Judicial Defendants. *See* FAC ¶¶ 86-89.

2

1  "[T]he non-conclusory 'factual content' and reasonable inferences from that content must be

2  plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

3  F.3d 962, 969 (9th Cir. 2009).  Although courts should hold self-represented litigants to "less

4  stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519,

5  520 (1972), "[v]ague and conclusory allegations of civil rights violations are not sufficient to

6  withstand a motion to dismiss," *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th

7  Cir. 1982).

8  **B.    Arbitrability of Claims against Epiq & Kia**

9  Epiq and Kia argue the Court should dismiss Austin's FAC because the underlying class

10  action settlement required class members to arbitrate any claim disputing the final determination

11  of what a class member is owed under the terms of the settlement agreement.[4]  Dkt. No. 56 at 14–

12  15.  Section 3.3.4 of the Kia Settlement Agreement provides that

13  > [w]ithin sixty (60) days of receipt of [Hyundai Motor America]'s or
[Kia America]'s final determination of a Claim, any Settlement
14  > Class Member dissatisfied with the determination may seek
arbitration through a [Better Business Bureau ("BBB")]
15  > administered alternative dispute resolution process by notifying
[Hyundai Motor America] or [Kia America] (as the case may be) in
16  > writing that the Settlement Class Member requests arbitration. . . .
After receipt of the Settlement Class Member's written notice,
17  > [Hyundai Motor America] and [Kia America] shall be permitted a
30-day good faith period in which to confer with the Settlement
18  > Class Member in an attempt to resolve the claim. If the claim cannot
be resolved during this period, [Hyundai Motor America] or [Kia
19  > America] shall initiate arbitration proceedings through a BBB
administered alternative dispute resolution process. . . . Any decision
20  > by the BBB will be final and binding upon all parties.

21

22  Settlement Agreement § 3.3.4 (Dkt. No. 27).  To the extent Austin seeks to challenge the final

23  determination of his claim, the settlement agreement required him to do so through arbitration.

24  However, the notice sent to putative class members states that "nothing in this Settlement

25  _____

26  [4] Epiq seeks judicial notice of the amended settlement agreement and the order granting final
approval of the settlement, as well as orders dismissing three actions brought by Austin in this
27  District.  Dkt. No. 27.  Because courts may take judicial notice of proceedings in other courts, *U.S.
ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992), these
28  documents are the proper subjects of judicial notice, and the Court **GRANTS** Epiq's request.

United States District Court
Northern District of California

will prohibit you from pursuing claims for (i) personal injury; (ii) damage to property other than to

a Class Vehicle; or (iii) any and all claims that relate to something other than a Class Vehicle and

the alleged defect." Dkt. No. 27 at 64.  Specifically, the settlement provided that

> [e]xcluded from the Kia Settlement Class are (a) all claims for death, personal injury, damage to property other than to the Kia Class Vehicle itself, and subrogation; (b) [Kia America], [Kia Corporation], and any affiliate, parent, or subsidiary of [Kia America] or [Kia Corporation]; (c) any entity in which [Kia America] or [Kia Corporation] has a controlling interest; (d) any officer, director, or employee of [Kia America] or [Kia Corporation]; (e) any successor or assign of [Kia America] or [Kia Corporation]; (f) any judge to whom the Litigation is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; (g) consumers or businesses that have purchased Kia Class Vehicles that, prior to the time of purchase, were deemed a Total Loss (i.e., salvage title or junkyard vehicles) (subject to verification through Carfax or other means); (h) current or former owners of Kia Class Vehicles who, prior to the Notice Date, released their claims in an individual settlement with [Kia America] or [Kia Corporation]; (i) owners who purchased the Class Vehicle with knowledge of existing damage to the ABS Module (damage that does not amount to a Total Loss; but rather, damage to the subject components); and (j) those persons who timely and validly exclude themselves from the Kia Class.

Settlement Agreement § 1.17 (Dkt. No. 27).  Austin alleges that "[i]n April, 2024, as soon as [he]

realized it was EPIQ's, in concert with KIA's, intent to defraud [him] out of 3/4th of the value of

his claim . . . he immediately terminated the contract, and provided notice."  FAC ¶ 68; *see also*

Opposition ("Opp.") (Dkt. No. 81) at 6.[5]  Construing Austin's allegations in the light most

favorable to him, the Court interprets his FAC to allege that he is not bound by the arbitration

provision in the settlement because his causes of action fall outside the scope of claims the

settlement prohibits.  However, many of Austin's allegations suggest his claims here are, at

bottom, centered on his dissatisfaction with the determination of his final claim under the

---

[5] The Court notes that Austin's opposition violates Civil Local Rule 3-4(c), as it contains multiple pages that obviously contain more than 28 lines per page and text smaller than 12 point type. Because the brief as currently formatted is exactly 25 pages, if it conformed to Rule 3-4(c), it would significantly exceed the page limit set in Civil Local Rule 7-2(b).  Austin is admonished to ensure future filings comply with the Local Rules and warns that future filings violating the Local Rules will be stricken.

1    Settlement Agreement.  Thus, his causes of action fall within the settlement agreement's

2    arbitration clause.  *See, e.g.*, FAC ¶ 4 ("Mr. Austin sometimes layered 3 or 4 different forms of

3    direct proof for a single expense and KIA-EPIQ went out of way to deprive opportunity for full

4    claim amount"); FAC ¶ 18 ("Mr. Austin received an Initial Determination notice of proposed

5    claim refund which not only did not match what was explicitly promised . . . but contained an

6    abundance of inaccuracies . . . ."); FAC ¶ 19 ("After[] initial inquiry and formal complaint Mr.

7    Austin subsequently received an Amended Determination . . . with a slightly higher

8    reimbursement amount . . . .").  If Austin has facts supporting a claim that is not precluded by the

9    Settlement Agreement, he has not alleged them here.  In any subsequent amended pleading, Austin

10    must present sufficient factual allegations to establish that the claims for which he seeks relief fall

11    outside the bounds of the Settlement Agreement, or the Court will be forced to dismiss the action

12    as untimely under the Settlement Agreement's arbitration provision.

13         **C.    Failure to State a Claim against Epiq & Kia**

14         Beyond the relation of the claims to the Settlement Agreement, as a whole, the FAC fails

15    to comply with Federal Rule of Civil Procedure 8, which requires a complaint to include "a short

16    and plain statement of the claim showing the pleader is entitled to relief."  Such a failure is, on its

17    own, a basis for dismissal because a complaint lacking "simplicity, conciseness and clarity as to

18    whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a

19    complaint," and "impose[s] unfair burdens on litigants and judges."  *See McHenry v. Renne*, 84

20    F.3d 1172, 1179-80 (9th Cir. 1996).  Even construing Austin's pleadings liberally, the Court

21    cannot make out which causes of action Austin intends to bring against which parties and on what

22    basis.  This is in no small part because the FAC is "argumentative, prolix, replete with

23    redundancy, and largely irrelevant."  *See McHenry*, 84 F.3d at 1177.  For example, the FAC's 73

24    pages and more than 150 pages of exhibits and declarations include photographs, screenshots, and

25    movie quotations without context and without any discernable relevance to Austin's claims, *see*

26    Dkt. No. 50-6 at 4, 9-11, 24-38, as well as significant redundancy, *see, e.g.*, Dkt. No. 50-7 at 2-8

27    (repeating verbatim sections of the FAC but labeling them as enumerated "facts").  As such, the

28    FAC is "unreasonably lengthy and infused with extraneous statements," and its "legal theories are

1    unclear, and lack sufficient factual allegations." *See Wiskind v. JPMorgan Chase Bank, N.A.,* No.

2    14-CV-04223-NC, 2015 WL 400549, at *2 (N.D. Cal. Jan. 29, 2015).

3        Beyond the general failure to comply with Rule 8, none of Austin's claims as currently

4    pleaded plausibly allege a claim for relief. The Court briefly considers the allegations as to each

5    cause of action advanced against Epiq and Kia.

### 1.    Title 42 U.S.C. § 1981

7        First, Austin asserts Epiq and Kia violated 42 U.S.C. § 1981, which prohibits

8    discrimination in the making or enforcement of contracts against, or in favor of, any race. "[A]

9    prima facie section 1981 case . . . requires proof of intentional discrimination," meaning Austin

10   must allege facts plausibly suggesting Epiq and Kia were "motivated by a discriminatory animus."

11   *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 538 (9th Cir. 1982). He

12   has not done so. Austin's allegations are conclusory: he alleges Epiq and Kia offered to pay non-

13   Black individuals "100% (or more) of the value of their claim, treating them as superior, whereas

14   they refused" to do so for Austin, "treating him as inferior, and cheating him out of 75%, or 3/4 of

15   the contract value, while his claim was extremely well documented, and substantiated." FAC

16   ¶ 34. He further asserts that Kia and Epiq's conduct is " 'blatantly' racist." *Id.* While the Court

17   must take Austin's factual allegations as true, it need not accept as true "allegations that are

18   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

19   *Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The FAC is missing factual allegations

20   sufficient to support his conclusory assertions of a Section 1981 violation, so the Court dismisses

21   this claim.

### 2.    Lanham Act

23       Austin also asserts a claim against Epiq and Kia for false advertising under Section 43(a)

24   the Lanham Act. "The Lanham Act is primarily intended to protect commercial interests from

25   unfair competition," *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1127 (N.D. Cal. 2010)

26   (citing *Mut. Pharm. Co. v. Ivax Pharms., Inc.*, 459 F. Supp. 2d 925, 934 (C.D. Cal. 2006)), and

27   accordingly individual consumers lack standing to bring such a claim, *see Southland Sod Farms v.*

28   *Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (listing the elements of a Section 43(a)

United States District Court
Northern District of California

6

claim, including that a plaintiff must show it "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products"); *Chacanaca*, 752 F. Supp. 2d at 1127 (finding consumers lacked standing to bring Section 43(a) claim where granola bar manufacturer's statements did not cause injury that was harmful to consumers' ability to compete with manufacturer). Accordingly, Austin must "allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014). Austin alleges he "has ownership in companies occupying the same sectors as" Kia and Epiq. FAC ¶ 59. But Austin alleges in the FAC that the false advertising for which Kia and Epiq are purportedly responsible was directed to Austin personally, and he does not allege any impact to a commercial interest of his. *See* FAC ¶¶ 59-65 (describing, for example, how Kia and Epiq's false advertising "triggered" his "purchase decision," and that he spoke with Kia agents "to assure he was making a good car buying decision based on his desired needs"). Austin alleges that his purchase of "an unsafe, unreliable, and dangerous car" injured him, not any commercial interest. FAC ¶ 63. As such, the Court finds Austin lacks standing to bring a Section 43(a) claim and dismisses it.

### 3.    Fraud & Fraudulent Inducement

Further, Austin asserts claims for fraud and fraudulent inducement against both Epiq and Kia, advancing that Kia defrauded him in its advertising of the safety and reliability of its vehicles, FAC ¶ 27, and both Kia and Epiq defrauded him in their advertisement of a class action settlement that its administration would not discriminate and would be fair, FAC ¶ 37. "Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (internal quotation marks and citation omitted). Moreover, Federal Rule of Civil Procedure 9 requires that any claim sounding in fraud "state with particularity the circumstances constituting fraud." To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks

United States District Court
Northern District of California

1    omitted).  Austin's allegations regarding fraudulent conduct are conclusory and fail to satisfy Rule

2    9.  For example, the FAC is devoid of allegations that any Defendant had knowledge of the falsity

3    of any of its representations.  Though it need not satisfy Rule 9's heightened pleading standard,

4    Austin's negligence claim against Epiq and Kia similarly fails because the FAC lacks factual

5    allegations to support Austin's conclusions.  To state a claim for negligence, a plaintiff must show

6    "(a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or

7    legal cause of the resulting injury."  *Jackson v. Ryder Truck Rental, Inc.*, 16 Cal. App. 4th 1830,

8    1837 (1993) (citation and emphasis omitted).  The FAC lacks nonconclusory allegations

9    supporting any of these elements.  Therefore, the Court dismisses the claim.  Any amended

10    complaint must identify the specific legal duty and assert factual allegations explaining how each

11    Defendant breached the duty and how that breach caused Austin's injury.

12                                              * * *

13          In sum, none of Austin's claims against Kia and Epiq are plausibly alleged, so the Court

14    **GRANTS** their motion to dismiss the claims against them.[6]

15          **D.    Claim Against Judicial Defendants**

16          As to the Judicial Defendants, Austin alleges they "have made repeated non-judicial acts,

17    conspiring with Defendants to pre-determine the outcome of" his cases.  FAC ¶ 88.  He contends

18    "some judges have not only made mistakes like misquoting and subsequently misapplying"

19    caselaw to " 'rig' or predetermine proceeding outcomes."  *Id.*  Austin seeks injunctive relief "to

20    prevent-correct prospective violations of Due Process-Equal Protection by [the Judicial

21    Defendants'] ongoing failure to protect Mr. Austin's rights (only injunctive from these defendants;

22    not damages)."  FAC ¶ 90.

23          Courts have the power to sua sponte dismiss a complaint for failure to state a claim upon

24    which relief can be granted.  *See Seismic Reservoir 2020, Inc. v. Paulsson,* No. 13–55413, 2015

25    WL 1883388, at *4 (9th Cir. Apr. 27, 2015) (quoting *Omar v. Sea–Land Serv., Inc.,* 813 F.2d 986,

26

27    [6] To the extent Austin intends to bring equal protection and due process claims against Epiq and
      Kia, they fail as a matter of law, as private conduct is not subject to the protections of the

28    Fourteenth Amendment's Due Process and Equal Protection Clauses.  *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991).

991 (9th Cir. 1987)).  Federal judges are absolutely immune from civil liability for acts performed in their judicial capacity, and their immunity extends not only to actions for damages but also for declaratory, injunctive, and other equitable relief.  *Moore v. Brewster*, 96 F.3d 1240, 1243 (9th Cir. 1996), *superseded by statute on other grounds*; *see also Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1394 (9th Cir. 1987).

Here, to the extent Austin tries to circumvent the Judicial Defendants' absolute immunity by challenging their purported non-judicial actions, the few allegations included in the FAC about the Judicial Defendants describe conduct that fits squarely into their judicial capacity.  Because Austin has failed to allege conduct performed by any Judicial Defendant in their non-judicial capacity, he has failed to state a claim.  Accordingly, the Court dismisses the claims against the Judicial Defendants with leave to amend.  Any amended complaint must include facts sufficient to plausibly allege any Judicial Defendant performed non-judicial acts such that they are not immune from Austin's claims.

## II.    CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED** and Austin's FAC is dismissed.  Because any equal protection or due process claim against Kia and Epiq fail as a matter of law, dismissal of those claims is with prejudice and Austin may not assert them in any future complaint.  Because Austin may be able to allege additional facts to state a plausible claim as to the remaining causes of action, the Court cannot conclude amendment would be futile, so dismissal is with leave to amend.  *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).  Any amended complaint is due by **October 22, 2025**.  Austin may not add parties or claims without stipulation of Defendants or leave of court.  The Court cautions Austin that should the second amended complaint fail to remedy the deficiencies identified in this Order, the Court may determine that further amendment would be futile and may dismiss it with prejudice.

//

//

//

//

9

1  Finally, the Court lifts its prohibition against filing as ordered at Dkt. No. 83, and the
2  parties may again file documents on the docket.  However, the Court admonishes the parties that
3  only documents contemplated by a Federal or Local Rule or this Court's Civil Standing Order may
4  be filed, and the Court will entertain motions for sanctions should any party file excessive or
5  frivolous documents moving forward.

7  **IT IS SO ORDERED.**

8  Dated: September 22, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**